# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2346

_____

| | | |
|---|---|---|
| Coleman McClain, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| American Economy Insurance | * | Western District of Missouri. |
| Company; American States Insurance | * | |
| Company; American States Preferred | * | |
| Insurance Company, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

No. 04-2347

_____

| | | |
|---|---|---|
| Sara Kenner, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Safeco Insurance Company, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

No. 04-2353
_____

Cynthia E. Canady, et al.,           \*
                                            \*
        Plaintiffs - Appellants,      \*
                                            \*
        v.                                  \*
                                            \*
Federal Insurance Company, et al.,    \*
                                            \*
        Defendants - Appellees.      \*
_____

Submitted:  April 13, 2005
Filed:  September 7, 2005
_____

Before LOKEN, Chief Judge, FAGG and BYE, Circuit Judges.
_____

LOKEN, Chief Judge.

In 1996, numerous plaintiffs sued twenty-five insurers under the Fair Housing Act, 42 U.S.C. §§ 3601 _et seq._, and the Civil Rights Acts of 1866 and 1870, 42 U.S.C. §§ 1981 & 1982, seeking class action relief for defendants' alleged discriminatory policies denying homeowners insurance to the residents of minority neighborhoods in Missouri. The district court[1] denied class certification and dismissed the complaint without prejudice, concluding that "plaintiffs lack standing to bring claims against defendants against whom they have alleged no direct injury." Canady v. Allstate Ins.

_____

[1]The HONORABLE FERNANDO J. GAITAN JR., United States District Judge for the Western District of Missouri.

Co., 1997 U.S. Dist. LEXIS 24067 (W.D. Mo. 1997), aff'd, 1998 U.S. App. LEXIS 15157, 162 F.3d 1163 (8th Cir. 1998) (table) (Canady I). Ten Canady I plaintiffs then filed class actions in state court against eighteen Canady I defendants, alleging that the same practices violate Missouri law. The district court enjoined plaintiffs from relitigating in state court the same causes of action against multiple unrelated defendants. Canady v. Allstate Ins. Co., 1999 U.S. Dist. LEXIS 23031 (W.D. Mo. 1999). Again, this court affirmed. Canady v. Allstate Ins. Co., 282 F.3d 1005 (8th Cir. 2002) (Canady II).

Meanwhile, in response to Canady I, plaintiffs filed ten new actions in the district court, each asserting virtually identical claims against a single Canady I defendant. Initially, the district court stayed the actions pending the appeals in Canady I and Canady II. After we affirmed, the district court ordered plaintiffs to file Revised Second Amended Complaints eliminating all claims of indirect injury, cautioning plaintiffs that they "cannot establish a 'direct injury' without showing a 'direct contact' between the plaintiffs and the defendant." Plaintiffs then filed Revised Second Amended Complaints, each challenging a single defendant's alleged "unlawful practices with respect to the marketing, underwriting, sale and pricing of homeowners insurance in a single, contiguous black community in Kansas City, Jackson County, Missouri (the 'Community')." The district court dismissed the amended complaints with prejudice for lack of Article III standing. In these consolidated appeals, plaintiffs challenge the dismissal of their claims against American States Insurance Company (the McClain action), Safeco Insurance Company (the Kenner action), and the Chubb group (the Canady action). We affirm.

Whether a plaintiff has standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000) (quotation omitted). The question arises from Article III, § 2, of the United States Constitution, which limits the subject matter jurisdiction of federal courts to actual cases and controversies. "[T]o satisfy

Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). An injury in fact is a "direct injury" resulting from the challenged conduct. Steger, 228 F.3d at 892.

In ordering plaintiffs to file Revised Second Amended Complaints, the district court relied upon the direct injury requirement of Steger, an action under the American with Disabilities Act alleging that a private commercial building was not properly accessible to handicapped persons:

> [T]he Court finds that plaintiffs cannot establish a "direct injury" without showing a "direct contact" between the plaintiffs and the defendant [insurer]. . . . As the court in Steger noted, although the plaintiffs [in that case] did not have to engage in the futile gesture of visiting a non-complying building that the landlord had no intention of remedying, the plaintiff "must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." [228 F.3d] at 892. Similarly, in the instant case, the plaintiffs must at least prove that they had knowledge of the defendants' discriminatory policies and that through this *direct contact* with the defendants, the plaintiffs knew that it would be futile to apply for insurance and were thus deterred.

Order of Sept. 30, 2002, at pp. 4-5 (emphasis added). Despite this directive, most of the plaintiffs named in the Revised Second Amended Complaints never contacted the defendant about the possibility of obtaining insurance. Like the district court, we will separately address the standing of the few plaintiffs who alleged "direct contacts" and the remaining plaintiffs whose standing is based on allegations they were deterred from seeking insurance by their knowledge of defendants' unlawful practices.

-4-

A. The Direct Contact Plaintiffs. In opposing American States' motion to dismiss, plaintiffs relied on deposition testimony of Coleman McClain that he asked an independent American States agent about purchasing homeowners insurance on a new home the McClains were building in an area adjacent to the Community and was falsely told, "American States does not write insurance in Missouri." The district court concluded that the McClains lack standing because this direct contact concerned insurance on a home located outside the Community:

> Plaintiffs . . . amend[ed] their Complaint to redefine the class as a single contiguous area. The Complaint does not say that it also includes areas which are immediately adjacent to the Community. Indeed the census tract in which the [McClains's] home is located does not even meet the definition set out in the Complaint as including those areas where the resident black population exceeds sixty percent.

We agree. Assuming without deciding that one phone call to an independent agent is sufficient direct contact for these purposes, the Revised Second Amended Complaint challenges American States' policies and practices in the Community, not elsewhere. Thus, the McClains lack standing because their injury is not "fairly traceable to the challenged action of the defendant." See Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 112 n.25 (1979). Indeed, the McClains are not even members of the plaintiff class as defined in paragraph 30 of the Complaint.

In opposing Safeco's motion to dismiss, plaintiffs relied on the deposition testimony of Sara Kenner. When Kenner purchased a home in the Community, the realtor obtained homeowners insurance from Safeco as part of the closing. Kenner did not contact Safeco or a Safeco agent herself and does not recall filling out a policy application. Two months later, Kenner received a notice from Safeco cancelling the policy based on "information obtained through a credit report." Kenner admitted that "my credit history would keep me from being able to buy a house conventionally." The district court concluded that this was not sufficient direct contact to establish

Kenner's standing to challenge Safeco's underwriting and marketing practices in the Community. On appeal, Kenner argues that the court erred in granting summary judgment on her wrongful cancellation claim without affording her an opportunity "to discover facts to support her contention that the cancellation of her policy was pretextual." We disagree. The district court properly reviewed the lengthy discovery record and resolved fact disputes relating to its jurisdiction; plaintiffs fail to demonstrate that the court's findings were clearly erroneous. See Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002). On this record, Kenner failed to establish standing by demonstrating that her alleged injury is "fairly traceable to the challenged action of the defendant."

In opposing Chubb's motion to dismiss, plaintiffs relied on allegations in the Revised Second Amended Complaint that three Canady plaintiffs made "recent" phone calls to Chubb agents who told them they could not qualify for homeowners insurance because they did not meet Chubb's "objective underwriting selection criteria, rules, guidelines and policies." The district court found these allegations "too speculative to support any showing of direct contact." Alternatively, the court concluded that these plaintiffs "cannot at this late stage in the proceedings attempt to create direct contact where none previously existed." We agree. See Steger, 228 F.3d at 892 ("standing is determined as of the lawsuit's commencement"); accord Perry v. Vill. of Arlington Heights, 186 F.3d 826, 830 (7th Cir. 1999).

B. The Deterrence Plaintiffs. The remaining plaintiffs allege a "deterrence" or "futile gesture" theory of injury-in-fact, arguing that they obtained knowledge of the defendants' discriminatory underwriting policies from unspecified sources, and this knowledge "deterred" them from making "futile" applications for homeowners insurance, thereby causing direct injury.

In Teamsters v. United States, 431 U.S. 324, 364 (1977), the Supreme Court held that employees who did not apply for jobs could obtain Title VII relief from a

discriminatory seniority system if they satisfied the "difficult task" of showing that their knowledge of the employer's discriminatory practices deterred them from applying. The Fourth Circuit adapted this principle to a Fair Housing Act claim of race discrimination in the sale of a dwelling:

> the following elements must be satisfied to establish a violation of fair housing law by reliance on the futile gesture theory: the plaintiff must be a member of a racial minority who was a potential bona fide buyer of the property and financially able to purchase it at the time it was offered for sale; the owner discriminated against people of the plaintiff's race; the plaintiff was reliably informed of this policy of discrimination and would have taken steps to buy the property but for the discrimination; and the owner would have discriminated against the plaintiff had the plaintiff disclosed an interest in the property.

Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1452 (4th Cir.), cert. denied, 498 U.S. 983 (1990). We adopted a similar fact-intensive approach in applying this principle to decide an issue of standing under the ADA:

> Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying . . . they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers.

Steger, 228 F.3d at 892, citing Laidlaw, 528 U.S. at 180-84.

The district court concluded that the deterrence plaintiffs lack standing because they did not have the direct contact needed to establish a direct injury. Plaintiffs argue that the court erred in requiring a showing of direct contact to establish direct injury under the futile gesture theory. Given the many intangible factors that impact an insurer's decision to issue a homeowners policy, we are inclined to agree with the

district court that direct contact with the insurer, or at least with its authorized agent, is a prerequisite to showing that an allegedly deterred plaintiff was "reliably informed" of the discriminatory policies.

Even if it might be possible in another case to establish standing based on the futile gesture theory without proof of direct contact, the deterrence plaintiffs have failed to satisfy their burden to show standing in these cases. They rely on bare allegations in the Revised Second Amended Complaints that defendants erected barriers to obtaining insurance that caused plaintiffs "who have experienced or otherwise acquired knowledge of those barriers, to conclude that attempts to acquire insurance . . . would be futile." But in earlier depositions, these plaintiffs testified that they had no personal knowledge of defendants' practices. On this record, after lengthy earlier proceedings, the district court was entirely justified in requiring a showing of direct contact.

Plaintiffs argue at length that the district court was required to accept the bare allegations in the Revised Second Amended Complaints. We disagree. Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. When plaintiffs relied on materials outside the pleadings in opposing the motions, defendants properly replied that the district court was entitled to resolve fact issues in determining its jurisdiction. See Osborn v. United States, 918 F.2d 724, 728 & n.4 (8th Cir. 1990). The district court did not rule on the motions until fourteen months after defendants served their replies. Thus, plaintiffs had more than sufficient notice of the need to support the bare futile gesture allegations in the Revised Second Amended Complaints. Instead, plaintiffs disclaimed any interest in submitting further evidence.[2]

---

[2]The Canady plaintiffs argue for the first time in their reply brief that the district court was *required* to hold an evidentiary hearing to resolve disputed fact issues. "Claims not raised in an initial brief are waived." Mahaney v. Warren County, 206 F.3d 770, 771 n.2 (8th Cir. 2000).

After nearly a decade of litigation and plaintiffs' repeated failure to establish standing by adequately alleging and proving injury-in-fact, the district court did not abuse its discretion in dismissing the Revised Second Amended Complaints with prejudice.  <u>See</u> <u>Jaramillo v. Burkhart</u>, 59 F.3d 78, 79 (8th Cir. 1995) (standard of review).  Accordingly, the judgments of the district court are affirmed.

_____